AO 106 (Rev. 01/09)  Application for a Search Warrant

FILED

APR 2 6 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

In the Matter of the Search of                    )
*(Briefly describe the property to be searched*    )
*or identify the person by name and address)*      )     Case No.      1 9 M J 1 7 1 4
ZTE Cellular Telephone IMEI: 860926031822609       )
                                                   )
                                                   )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____Southern_____ District of _____California_____ *(identify the person or describe property to be searched and give its location):* **See Attachment A-1**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: **See Attachment B-1**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___8___ U.S.C. § ___1324___ (a)(1)(2) , and the application is based on these facts: **See Attached Affidavit**

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Georgina A. Hayslip BPA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __4/26/19__

_____
*Judge's signature*

City and state: __San Diego, California__          Hon. Mitchell D. Dembin, United States Magistrate
                                                   *Printed name and title*

## ATTACHMENT A-1

## PROPERTY / ITEMS TO BE SEARCHED

The property/items to be searched are described as:

(1) ZTE Cellular Phone
    IMEI: 860926031822609 ("TT-1");

The items are currently in the possession of the Department of Homeland Security, San Diego Sector, Asset Forfeiture Office 3751 Beyer Boulevard, Building 24, San Ysidro, California.

## ATTACHMENT B-1

## PROPERTY TO BE SEIZED

The following evidence to be searched for and seized pertains to violations of Title 8, United States Code Section 1324:

1.  Communications, records, or data such as emails, text messages, photographs, audio files, videos, or location data:

    a.  tending to indicate efforts to transport undocumented aliens;

    b.  tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to transport undocumented aliens;

    c.  tending to identify co-conspirators, criminal associates, or others involved in transporting undocumented aliens;

    d.  tending to identify travel to or presence at locations involved in the transportation of undocumented aliens, such as stash houses, load houses, or delivery points;

    e.  tending to identify the user of, or persons with control over or access to, the target phones; or

    f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

1
2

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

3    IN THE MATTER OF THE SEARCH OF

4    ZTE Cellular Phone
5    IMEI: 860926031822609

6    LG Cellular Phone
7    IMEI: 356233090408698

**AFFIDAVIT IN SUPPORT OF
APPLICATION FOR SEARCH
WARRANT**

8
9
10        I, Georgina A. Hayslip, United States Border Patrol Agent, having been duly sworn,
11    depose and state as follows:

12                              **INTRODUCTION**

13        1.      This affidavit is made in support of an application for a warrant to search:

14              **(A)**    One ZTE Cellular Phone with IMEI: 860926031822609
15                      **("TT-1");**

16              **(B)**    One LG Cellular Phone with IMEI: 356233090408698
17                      **("TT-2");**

18
19    **TT-1** and **TT-2** are collectively referenced herein as the **Target Telephones**. The **Target**
20    **Telephones** were seized from Crystal Almanza MARCIEL, the defendant in 19-CR-
21    01139-WQH, on March 9, 2019, at or about the time of her arrest for alien smuggling in
22    connection with that case.

23        2.      As explained further below, there is probable cause to believe that the **Target**
24    **Telephones** were being used by MARCIEL to communicate with co-conspirators prior to
25    and during an alien smuggling event on March 9, 2019.  Probable cause exists to believe
26    that the **Target Telephones** contains evidence relating to violations of Title 8, United
27    States Code, Sections 1324(a)(1)(A)(v)(I) (alien smuggling conspiracy); 1324(a)(1)(A)(i)
28    (bringing  aliens  to  the  U.S.  to  a  place  other  than  a  designated  port  of  entry;

1324(a)(1)(A)(ii) (transporting illegal aliens); 1324(a)(1)(A)(iii) (harboring illegal aliens); 1324(a)(2)(B) (bringing aliens to the United States), and Title 18, United States Code Section 2 (aiding and abetting). The **Target Telephones** are currently in the possession of the Department of Homeland Security, United States Border Patrol, El Cajon Border Patrol Station, El Cajon, California 92020.

3.      Based on the information below, there is probable cause to believe that a search of the **Target Telephones**, as described further in **Attachment A-1 (TT-1)** and **Attachment A-2 (TT-2)**, will produce evidence of the aforementioned crimes, as described in **Attachment B-1 (TT-1)** and **Attachment B-2 (TT-2)**.

## EXPERIENCE AND TRAINING

4.      I am a Border Patrol ("USBP") agent with the Department of Homeland Security, Customs and Border Protection, with the United States Border Patrol (USBP). I have been employed by USBP since January 2001 and graduated from the USBP Basic Border Patrol Training Academy located in Charleston, South Carolina in May 2001. The 19-week Academy curriculum covered specialized training in the Immigration and Naturalization Act (INA), criminal law, and statutory authority, as well as cross-training in Title 21 United States Code, and cross-training in Title 19 United States Code, Customs law violations. I have been trained in investigating various violations of Federal Law, including alien smuggling, narcotics smuggling, weapons smuggling, and bulk currency smuggling. I have worked with, and consulted with, other agents who have extensive experience in these types of investigations.

5.      I am currently assigned to the El Cajon Station Intelligence Team (ECJ SIT). ECJ SIT is tasked with the responsibility of investigating, arresting, and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. ECJ SIT is also tasked with investigating narcotics smuggling, bulk cash smuggling, and assaults on federal officers, theft and damage of government

2

1   equipment, escapes from federal custody, and a variety of other federal and state offenses.
2   ECJ SIT agents deploy in plainclothes attire and drive unmarked Border Patrol vehicles.

3       6.    During the course of my employment with USBP, I have arrested numerous
4   individuals in connection with alien smuggling crimes. I have also participated in several
5   long-term investigations including, but not limited to alien smuggling investigations, that
6   have resulted in criminal prosecutions.

7       7.    As a USBP agent, I am a Federal Law Enforcement Officer within the
8   meaning of Rule 41(b) of the Federal Rules of Criminal Procedure; that is, a government
9   agent engaged in the enforcement of the criminal laws of the United States. Accordingly,
10  I am authorized to request issuance of federal search and seizure warrants. As an agent with
11  the USBP, my responsibilities include the investigation of possible violations of
12  Immigration and Nationality laws (Title 8, United States Code), including alien smuggling
13  in violation of Title 8, United States Code, Section 1324 and related offenses.

14      8.    Through the course of my training, investigations, work experience and
15  conversations with other law enforcement personnel, I am aware that it is common practice
16  for alien smugglers to work in concert with other individuals and to do so by utilizing
17  cellular telephones and portable radios, as well as other modes of communication, to further
18  their criminal activities. I am also aware that it is a common practice for alien smugglers
19  to communicate with the smuggled aliens regarding smuggling arrangements, pickup
20  locations, and payments and to do so using cellular telephones and portable radios as well
21  as other modes of communication. Conspiracies involving alien smuggling generate many
22  types of evidence including, but not limited to, cellular phone-related evidence such as
23  voicemail and text messages referring to the arrangements of travel, pickup and payment,
24  names, photographs, text messages, and phone numbers of co-conspirators and aliens to be
25  smuggled.

26      9.    Based upon my training and experience as a USBP agent, and my
27  consultations with other law enforcement officers experienced in alien smuggling
28

3

investigations, and all of the facts and opinions set forth in this affidavit, I submit the following:

      a.     Alien smugglers and traffickers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

      b.     Alien smugglers and traffickers will use cellular telephones because they are able to actively monitor the progress of the illegal activities from point of origin in Mexico to point of destination in the United States.

      c.     Alien smugglers and traffickers and their accomplices will use cellular telephones because they can easily arrange and/or discuss smuggling fees, availabilities of transportation and costs associated with smuggled aliens.

      d.     Alien smugglers and traffickers will use cellular telephones to direct, coordinate the transfer and acquisition of payment for smuggling and trafficking fees, request additional fees from aliens and/or their sponsors, and coordinate with drivers to synchronize an exact drop off and/or pick up time of their aliens.

      e.     The use of cellular telephones by smugglers and traffickers tends to generate evidence that is stored on the cellular telephones including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

      f.     Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

      10.     The following is based on my personal involvement in this investigation, oral and written reports about this investigation that I have received from federal law enforcement officers, law enforcement record and intelligence checks, conversations with other law enforcement agents, and my review of records obtained during this investigation.

4

Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Telephones**, it does not contain all of the information known to me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## <u>STATEMENT OF PROBABLE CAUSE</u>

12.     On March 8, 2019, at approximately 7:30 p.m., Supervisory Border Patrol Agents Roman B. Muniz, John L. Fowler, and Border Patrol Agents Julie Amati, Matthew Oleson, and Jose L. Paz were performing their respective assigned duties within the El Cajon (ECJ) Border Patrol Station's area of responsibility (AOR).  All agents were dressed in full rough duty uniform, and Agents Muniz, Fowler, and Amati were each driving a fully marked Border Patrol vehicle with functioning lights and siren.  At that time, the nearby Border Patrol checkpoints located on Interstate 8, Old Highway 80, and State Route 94 were non-operational due to inclement weather.  When checkpoints are non-operational, based on my knowledge, training and experience in the area, alien smuggling activity increases dramatically along the major travel thoroughfares originating from the southern border due to the reduced possibility of detection and apprehension.

13.     Agent Paz, who was operating a handheld Forward Looking Infrared (FLIR) device, positioned himself on a highpoint in order to observe an area known to Border Patrol agents as "Zuellner's," This area is a major corridor for alien smuggling activity. Additionally, the areas surrounding Zuellner's has had a recent increase in both criminal alien apprehensions and smuggling events.  Agent Paz was scanning the nearby areas, and at approximately 8:13 p.m., near an area known to Border Patrol agents as the "Swordfish House," he observed what he suspected to be illegal aliens running north of State Route 94 (SR94) and enter into what appeared to be a sport utility vehicle.  Agent Paz relayed these observations via radio to nearby agents.

14.     At approximately 8:15 p.m., Agent Oleson, who was walking near an area known to Border Patrol agents as the "Little Trestle," which is located just east of the

Swordfish House, observed what appeared to be a maroon colored SUV with fogged up windows traveling east on SR94. Agent Oleson relayed this observation via radio to nearby agents.

15.    Agent Muniz was positioned near an area known as "Lone Pine," which is located east of the Swordfish House. Shortly after Agent Oleson relayed his observation, Agent Muniz observed a maroon colored SUV, with fogged up windows, traveling east past his position. Agent Muniz positioned his vehicle behind the SUV and requested record checks on the vehicle's license plate (CA 4RCA103) through the San Diego Sector Tactical Communications Center.

16.    At approximately 8:22 p.m., Agent Muniz attempted to perform a vehicle stop just east of Forrest Gate Road on SR94. The driver of the vehicle slowed to approximately 40 miles per hour (MPH) and began to wave his left hand out of the rolled down driver's side window, indicating that Agent Muniz should pass his vehicle. Agents Fowler and Amati were following behind Agent Muniz with their emergency lights activated. The driver of the vehicle continued, and finally came to a stop at the intersection of Buckman Springs Road and SR94. This area is located approximately 10 miles east of the Tecate, California Port of Entry and approximately 1.2 miles north of the United States/Mexico International Boundary.

17.    Agent Fowler exited his vehicle and approached the driver's side of the SUV. Agent Fowler reached in to remove the keys from the ignition, and asked the driver, later identified as Sidney David RACHAL, to exit the vehicle. Agent Amati approached the rear of the vehicle, while Agent Muniz approached the passenger side of the vehicle. Both agents observed three individuals laying in the rear area of the SUV, which did not have any seats. Agent Muniz asked the passenger of the vehicle, later identified as Crystal Almanza MARCIEL, to exit the vehicle. Agent Amati assisted Agent Muniz with the passenger of the vehicle.

18.    Agent Muniz then opened the rear door of the vehicle and observed three male subjects, later identified as F.L.S (a juvenile), S.R.G (a juvenile), and Leonardo Flavio

SALCE-Ramirez, laying down on the floor of the vehicle. Agent Muniz identified himself as a Border Patrol agent and asked each subject, individually, to state his citizenship. Each subject replied that he was a citizen of Mexico. Agent Muniz then asked each subject if he had any immigration documents. All stated that they did not.

19.    At approximately 8:28 p.m., Agent Muniz placed F.L.S., S.R.G., and SALCE under arrest. At the same time, Agent Muniz also placed the driver, RACHAL, and the passenger, MARCIEL, under arrest for alien smuggling.  Each of the subjects was transported to the Forrest Gate Processing center located in Campo, California.

20. At the Forrest Gate Processing center, at approximately, at approximately 11:34 PM, Border Patrol Agent (BPA) Stephen H. Cabrera advised Sidney RACHAL of his Miranda rights. RACHAL stated that he understood these rights and was willing to speak to agents without an attorney present. RACHAL admitted that, on March 8, 2019, he knowingly traveled to Campo, California to pick up illegal aliens. RACHAL claimed that he owed a debt of $20,000 USD and was going to pay it off by transporting illegal aliens to Los Angeles, California. RACHAL stated that, in the last few months, he had been called several times to pick up illegal aliens in Campo, California and drive them to various hotels in the Los Angeles, California area. RACHAL also admitted to having previously transported $24,000 and $30,000 USD from smuggling proceeds to Mexico. During this time, RACHAL agreed to provide the agents with limited information from his phone; that information was only the contact information for one smuggler.

21. At approximately 1:33 a.m., Border Patrol Agent (BPA) Daniel Ochoa advised Crystal Almanza MARCIEL of her Miranda rights. MARCIEL stated that she understood her Miranda Rights, and was willing to answer questions without a lawyer present. Border Patrol Agent Miguel Reyes witnessed this. The statement MARCIEL provided was inconsistent with, and contradicted by, the admission given by RACHAL.  MARCIEL stated her true and correct name is Crystal MARCIEL. MARCIEL stated that she is a citizen and national of the United States. MARCIEL stated that he was born in West Covina, California on January 8, 1983. MARCIEL stated that her and her boyfriend Sidney

7

David RACHAL drove to the Jamul casino. MARCIEL stated that, after gambling there for a while, they decided to drive to the Golden Acorn. MARCIEL stated that, on their way to the Golden Acorn, they saw three individuals on the side of the highway. MARCIEL stated that she told RACHAL to stop and see if they needed help. MARCIEL stated that one of the individuals asked them in the English language that they need it a ride to a nearby store. MARCIEL stated that due to the cool weather and two of the individuals looking like little kids, they both agreed to give them a ride. MARCIEL stated that shortly after Border Patrol agents stopped them. MARCIEL stated that she did not know the individuals were illegal aliens. At approximately, 2:03 a.m., the sworn statement was concluded.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION
## AS TO THE CELLULAR TELEPHONE

22.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to

such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23.     Following the issuance of this warrant, I will collect the **Target Telephones** and subject them to analysis. All forensic analysis of the data contained within the **Target Telephones** and their memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

25.     Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that the **Target Telephones** were used to facilitate the offense of alien smuggling. The **Target Telephones** were likely used to facilitate the crimes of aiding and abetting and bringing in an unlawful alien for financial gain and without presentation by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) (alien smuggling conspiracy); 1324(a)(1)(A)(i) (bringing aliens to the U.S. to a place other than a designated port of entry; 1324(a)(1)(A)(ii) (transporting illegal aliens); 1324(a)(1)(A)(iii) (harboring illegal aliens); 1324(a)(2)(B) (bringing aliens to the United States), and Title 18, United States Code Section 2 (aiding and abetting). There is also probable cause to conclude that evidence, fruits and instrumentalities of the illegal activities committed by MARCIEL, as described in **Attachment B-1** and **Attachment B-2**, continue to exist on the **Target Telephones**.

9

1    26.    Therefore, I respectfully request that the Court issue a warrant authorizing me,

2  or another federal and state law enforcement officers specially trained in digital evidence

3  recovery, to search the property described in **Attachment A-1** and **Attachment A-2**, and

4  the seized item listed in **Attachment B-1** and **Attachment B-2**, using the methodology

5  described above.

6

7                                   Georgina A. Hayslip

8                                   U.S. Border Patrol Agent

9

10   Subscribed and sworn to before me this _26_ day of April, 2019.

11

12

13                HONORABLE MITCHELL D. DEMBIN

                 UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                         10